**DIVERSIFIED UTILITIES SALES, INC.**

v.

**MONTE FUSCO EXCAVATING CONTRACTING COMPANY, INC. and United States Fidelity and Guaranty Company.**

Civ. A. No. 76–818.

United States District Court,
E. D. Pennsylvania.

July 27, 1976.

---

Douglas P. Coopersmith, Philadelphia, Pa., for plaintiff.

Barbara L. Farley, Philadelphia, Pa., for defendant.

## MEMORANDUM

GORBEY, District Judge.

On March 18, 1976, plaintiff, a Pennsylvania corporation, filed a complaint in assumpsit against defendant, Monte Fusco Excavating Contracting Company, Inc. (Monte Fusco), a New Jersey corporation, which does not have its principal place of business in the Commonwealth of Pennsylvania. The other defendant, United States Fidelity and Guaranty Company (USF&G), is a Maryland corporation which does not have its principal place of business in the Commonwealth of Pennsylvania. The amount in controversy exceeds $10,000 exclusive of interest and costs.

Service was made on the defendants on or about March 26, 1976. On April 22, 1976, Monte Fusco filed a pro se answer to plaintiff's complaint, which answer made no reference whatever to the other defendant, which was its surety company. No copy of the answer was sent to plaintiff or plaintiff's counsel as a result of which plaintiff's counsel paid to have a copy sent to him by the Court Clerk. No answer having been filed by defendant, USF&G, judgment by default in the amount of $13,210.80 was entered against defendant USF&G, pursuant to Fed.R.Civ.Proc. 55(a), on April 26, 1976.

On June 21, 1976, without complying with Local Rule 36, counsel for defendant USF&G filed a motion for stay of proceedings pending disposition of its motion to vacate the default judgment, and to allow it to file and serve its answer. On July 2,

1976, counsel for USF&G filed a request with the Clerk of Court for the withdrawal of the prior motion, after which identical motions in compliance with Local Rule 36 were filed on July 13, 1976. On July 13, 1976, plaintiffs filed an answer to the motion to vacate the default judgment.

The motion filed on behalf of USF&G, supported by the affidavit of John A. Monte Fusco, who identifies himself as a defendant, but is President of the corporation, asserts that he first learned that a judgment had been rendered against his co-defendant on May 25, 1976. He asserts that on previous occasions he had hired an attorney to represent USF&G and when the answer was filed pro se, he assumed this was adequate for his surety company. After being informed of the default judgment, he retained counsel on behalf of USF&G. A second affidavit was filed by Michael A. Lepre, who describes himself as an authorized representative of the defendant USF&G Company. In this affidavit a valid defense and counterclaim are asserted.

Defendant requests relief pursuant to Rule 60(b) of the Federal Rules of Civil Procedure, which provides in part:

"On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; . . . or (6) any other reason justifying relief from the operation of the judgment . . . ."

It is to be noted that the present situation was brought about as a result of two mistakes, the first by representatives of USF&G, who mistakenly assumed that its co-defendant would engage counsel on its behalf, as on prior occasions, and the second by Monte Fusco's representatives who mistakenly assumed that its pro se answer

would also be regarded as an answer on behalf of its surety company, USF&G.

It is the mistake of USF&G with which we are directly concerned, and as to it alone, Rule 60(b)(1) is relevant. But when we consider such mistake and its effect on its non-defaulting co-defendant, it would appear that relief to USF&G, may properly be given under Rule 60(b)(6) for "any other reason justifying relief from the operation of judgment. . . ." It is perfectly obvious, because of the suretyship relationship, that if the default judgment against USF&G is not set aside, the ultimate loss would be borne not by the defaulting surety company but by its non-defaulting co-defendant.[1]

In plaintiff's answer to the motion to vacate the default judgment, plaintiff alleges in paragraph 5 that plaintiff's complaint was served upon USF&G in Orange, New Jersey.

In paragraph 7 it is alleged:

"On or about April 30, 1976, plaintiff's counsel had a telephone conversation with Michael Lepre, of USF&G, who agreed to satisfy the judgment held against USF&G in favor of the plaintiff upon completion of a construction project in which Monte Fusco was the general contractor. In consideration of the promise to satisfy the judgment, plaintiff agreed to restrain from executing upon the judgment prior to completion of the construction project. Plaintiff's counsel suggested that a letter confirming this agreement be prepared and signed by all parties and on May 4, 1976 said letter was mailed to Mr. Lepre, a copy of which letter is attached hereto and made a part hereof and marked Exhibit 'B'."

In paragraph 8 it is alleged that:

"On May 10, 1976, plaintiff [plaintiff's counsel] spoke with Michael Lepre, who

---

1. The surety bond, attached as Exhibit A to defendant's notice of intention to file motion filed July 13, 1976, docket entry # 10 provides in part:

"III(A) Undersigned shall indemnify . . . Surety from and against any and all liabilities, losses and expenses of whatsoever kind

or nature (including but not limited to, interest, court costs and counsel fees) imposed upon, sustained, or incurred by Surety by reason of: (1) Surety having executed, provided or procured BOND(S) in behalf of Principal, or . . . ."

advised him that he had not yet read the letter because he was too busy with other matters and that he would send it to plaintiff's counsel by Friday, May 14, 1976."

In paragraph 9 it is alleged that:

"On Monday, May 17, 1976, plaintiff's counsel again spoke to Mr. Lepre, who again indicated he was too busy to have read the letter and that he would review it and mail it back to plaintiff's counsel on Friday, May 21, 1976."

In paragraph 10 it is alleged:

"On Monday, May 24, 1976, plaintiff's counsel once again spoke with Mr. Lepre, who, at that time, stated he could not sign the letter which confirmed the agreement which was made orally on April 30, 1976."

Paragraph 2 of Exhibit "B", a copy of the aforementioned letter, reads as follows:

"In consideration of my client's restraining from executing upon the judgment it holds against USF&G, USF&G promises to satisfy the aforementioned judgment in full upon completion of the development of the Raritan Arsenal County Park, Middlesex County, Edison, New Jersey. Upon acceptance of this project by the County, a check, made payable to Douglas P. Coopersmith, Esquire, attorney for Diversified Utilities Sales, Inc., will be forwarded to this office. Notwithstanding any requirements of New Jersey law, the aforesaid check will be tendered as soon as the job is accepted as aforesaid, without regard to any 80 day waiting period as provided for in New Jersey statutes. Upon satisfaction of the judgment, formal documents will be filed with the Eastern District Court to remove any judgment against USF&G from the court record.

"It is understood and agreed that USF&G will satisfy the judgment held by my client without regard to any defenses which Monte Fusco Excavating Contracting, Inc. may have against Diversified on the underlying cause of action as pleaded by my client in its complaint."

Returning now to plaintiff's answer to the motion to vacate the default judgment, we find in paragraph 11:

"Plaintiff believes, and therefore avers, that under all of the foregoing circumstances, that defendant has failed to establish *excusable* neglect so as to justify the vacating of the default judgment entered on April 26, 1976."

■ The obvious purpose of the alleged oral agreement, was to protect plaintiff's default judgment against USF&G, the defaulting party, at the expense of the non-defaulting defendant Monte Fusco Excavating Contracting Company, Inc. which has a defense and a counterclaim against the plaintiff as well as the benefits it is entitled to under the aforementioned New Jersey statutes, for the alleged oral agreement must be considered in the light of the general rule of suretyship that the liability of a surety is coextensive with that of the principal, and accordingly, a surety is bound to perform whatever may be legally required of its principal. *Downer v. U. S. Fidelity & Guaranty Co. of Maryland,* 46 F.2d 733 (3d Cir. 1931); *McShain v. Indemnity Ins. Co. of North America,* 338 Pa. 113, 12 A.2d 59 (1940). Under normal circumstances, because of the principal and surety contractual status, such an agreement if made should be regarded as unconscionable, contrary to public policy, and unenforceable, under the rule that a contract, the object or tendency of which is to place one of the parties thereto under an obligation to assume an antagonistic or any inconsistent position with regard to a third person, is invalid. *Roberts v. Criss,* 266 F. 296 (2d Cir. 1920); *Loesch v. Vassiliades,* 17 N.J.Super. 306, 86 A.2d 14 (1952). The same principle is applicable to an agreement between parties the purpose and object of which is to induce one party to the agreement to violate his contract with a third person. In a surety contract, as in all contracts, there is an implied promise not to do anything which would prejudice the rights of the other party. Furthermore, the law of torts recognizes as a legal wrong interference by procuring a breach of contract. See: Restatement of Contracts, § 576; Law of

Torts, 4th Ed. 1971, William Prosser, Interference with Contractual Relations, § 129.

This case does *not* involve normal circumstances, because, as stated in plaintiff's answer to the motion to vacate default judgment, paragraph 12, it is alleged:

"Plaintiff, since the institution of the instant law suit, has instituted Chapter XI proceedings before the Honorable Emil F. Goldhaber, of the United States District Court for the Eastern District of Pennsylvania, and as of this date plaintiff's counsel herein has made application to represent the plaintiff in the above captioned matter."

Against this factual and bizarre background we must apply the law as it has been given to us by the Court of Appeals for the Third Circuit which court has consistently held that Rule 60(b) must be given a liberal construction and that the interests of justice are best served by trial on the merits. *Tozer v. Charles A. Krause Milling Co.,* 189 F.2d 242 (3d Cir. 1951); 487 F.2d 1395 (1973), affirming without published opinion, *Schartner v. Copeland,* 59 F.R.D. 653 (M.D.Pa.1973), wherein the district court cited and applied *Tozer, supra.*

In the Third Circuit, a district court cannot rest a denial of a motion to set aside a default judgment on the defendant's negligent failure to timely plead to a complaint, without determining whether prejudice would accrue to the plaintiff if the motion were granted, and whether a meritorious defense has been presented in support of the set aside motion. *Medunic v. Lederer,* 533 F.2d 891 (1976).

In this case it does not appear that any special harm would result to the plaintiff if the default judgment against the surety company is set aside, except some delay in finally realizing satisfaction of its claim, should plaintiff be successful in a trial on the merits.

It is quite significant that one of the alleged defenses to plaintiff's complaint is that the action was prematurely filed, since N.J.S.A. 2A:44–145 requires that no action be brought against any of the sureties on the bond required by said article until the expiration of 80 days after the authorized acceptance of the work, and that said work has not been accepted to date. Furthermore, defendant Monte Fusco, for which USF&G is surety, and which is not in default, has asserted defenses going to the merits and also a counterclaim against the plaintiff. In a trial on the merits, Monte Fusco might prevail on its counterclaim and other defenses, but this would not benefit said defendant unless the default judgment against the surety be set aside, because of the surety's right to indemnity.

The inaction of USF&G after service of the complaint had been made on it, is not to be commended as a prudent business practice nor, as evidenced by this litigation, from a legal standpoint. Viewing the mistake which led to the default as made by defendant other than the one against whom the default judgment was entered, the adverse effect of such mistake, if the judgment be not set aside, will fall wholly upon the one not in default because of the surety status of moving defendant. Consequently, relief granted by this court may also be regarded as having been granted under Rule 60(b)(6): "any other reason justifying relief from the operation of the judgment", the prevention of injustice to the principal under the surety bond, the non-defaulting defendant, because: "In simple English, the language of the 'other reason' clause, for all reasons except the five particularly specified, vests power in courts adequate to enable them to vacate judgments whenever such action is appropriate to accomplish justice." *Klapprott v. United States,* 335 U.S. 601, 614–615, 69 S.Ct. 384, 390, 93 L.Ed. 266 (1949).

Finally, as respects the matter of prejudice to the plaintiff if the default judgment be set aside, the fact that the plaintiff is presently in Chapter XI proceedings in the United States District Court for the Eastern District of Pennsylvania, Bankruptcy No. 76–820 E.G., is no valid reason for denying the motion to set aside the default judgment, for the rights of the corporation's creditors can rise no higher than

those of the corporation itself. *Tozer v. Charles A. Krause Milling Co., supra,* page 246, footnote 6.

Accordingly, the default judgment will be set aside as per order *eo die.*