**August E. SCHARTNER, Jr.,**
**Plaintiff,**

v.

**Robert H. COPELAND et al.,**
**Defendants.**

**Civ. A. No. 72–235.**

United States District Court,
M. D. Pennsylvania.

May 23, 1973.

August E. Schartner, Jr., pro se.

Francis B. Haas, Jr., Edward W. Rothman, Harrisburg, Pa., for defendants Copeland and Gibney.

Francis J. O'Gorman, Jr., Harrisburg, Pa., for defendant Harbold.

OPINION

MUIR, District Judge.

On May 18, 1973, a hearing was held to consider the motions of Defendants Copeland, Gibney and Harbold to set aside the entry of default against them. At the close of the hearing, the Court issued an order granting the motions. This Opinion sets forth the reasons for that Order.

The Plaintiff, a prisoner at the State Correctional Institution, Huntingdon, Pennsylvania, was permitted to file this pro se civil rights action in forma pauperis on May 3, 1972. The complaint

charged that the six Defendants conspired to convict the Plaintiff by perjured testimony. The alleged perjured testimony took place on October 6, 1966, and the Defendant was convicted on October 10, 1966. The United States Marshal made service upon all of the Defendants during May and June, 1972. Three of the Defendants, Coons, Halke and Reneker, answered the complaint by filing a motion for summary judgment. The summary judgment motion was granted on November 14, 1972. Defendants Copeland, Gibney and Harbold never filed an answer to the complaint, and on April 5, 1973, the Clerk entered default against them pursuant to F.R.Civ. P. 55(a). Motions under F.R.Civ.P. 55(c) to set aside the entry of default were filed by Defendant Harbold on April 25, 1973, and by Defendants Gibney and Copeland on May 1, 1973.

The May 18, 1973 hearing on Defendants' motions to set aside the entry of default revealed the following facts. The three Defendants were prosecution witnesses at Plaintiff Schartner's October, 1966 trial for armed robbery of a supermarket. In addition, the Defendants testified at the trial and two retrials of Donald Allen, Plaintiff's accomplice in the robbery. Defendants Copeland and Gibney, members of the Harrisburg Police Department, had investigated the robbery by Plaintiff and Allen. Defendant Harbold was a private citizen who witnessed the crime. Each of the Defendants had frequently been subpoenaed to appear at the several trials.

Defendant Gibney has been a member of the Harrisburg Police Department for 17 years. On May 10, 1972, the United States Marshal served a copy of the complaint in this case upon G.L. Houck, clerk to the Harrisburg Chief of Police. The complaint was forwarded to Gibney shortly thereafter. He scanned the contents of the papers, but did not take the matter seriously. The complaint was a fourteen-page document, handwritten on yellow legal paper. Gibney thought that it was a "crank" letter, as he had often in the past received letters and threats from criminals whom he had helped to convict. At some point, Gibney mentioned to the Chief of Police that Schartner was trying to sue him. The Chief told him not to worry about it because the Department "law bureau" would handle the matter. With this assurance, Gibney disregarded the complaint and subsequent motions and briefs, also handwritten, which he received periodically in the mail. Only when he was notified by the Court Clerk on April 5, 1973, that a default had been entered against him did Gibney realize the gravity of his inaction.

Defendant Copeland retired from his position as detective on the Harrisburg Police Department on January 1, 1972, because of heart trouble. On May 11, 1972 the U. S. Marshal served him with a copy of the complaint. Like Gibney, Copeland did not realize that he had been made a party to a legal proceeding because the complaint did not look "official." He examined the attached summons, but could find no seal.[1] Copeland called Defendant Gibney at the Police Station concerning the "communication" from Schartner. Gibney, apparently resting upon the assurances of the Chief of Police, told him that everything would be taken care of by the Department. Copeland took no action until notified of the entry of his default.

The U.S. Marshal made 8 unsuccessful attempts to serve the complaint upon Defendant Harbold. Finally, on June 29, 1972, service was made upon Mrs.

---

1. At the hearing, the summons was produced as an exhibit. The seal of the Court was, in fact, affixed thereto. However, the vague imprint which the seal made upon the paper is not easily discernible to the naked eye, and only by rubbing one's fingers over the imprint could its existence be verified.

Harbold. She has no recollection of this event. This is understandable, since Mrs. Harbold had just recovered from a serious illness, and since service was made during the flooding and subsequent confusion in Harrisburg produced by Hurricane Agnes in late June, 1972. The Harbold residence was practically isolated and without electricity for several days. Defendant Harbold never saw the complaint and summons. Later, he began receiving other documents filed in the case but did not comprehend their import. Harbold called the District Attorney who had participated in the Schartner criminal trial. The D.A. told him that the documents were of no consequence and that no action was necessary. A similar message was conveyed to Harbold by Defendant Copeland when the two met on the street one day. Like the other two Defendants, Harbold felt compelled to act only upon notification that a default had been entered against him on April 5, 1973.

 Courts look upon default judgments with disfavor, and therefore, motions to set aside default judgments are considered liberally. Tozer v. Charles A. Krause Milling Co., 189 F.2d 242 ⟨3d Cir. 1951⟩; Residential Reroofing Union Local 30–B v. Mezicco, 55 F.R.D. 516 (E.D.Pa.1972). Where default has been entered, but default judgment not yet granted, an even more liberal standard is applied to a motion to set aside the entry of default. See generally Wright and Miller, Federal Practice and Procedure, § 2694. F.R.Civ.P. 55(c) provides that an entry of default may be set aside "for good cause shown." This provision vests in the Court a broad discretion to set aside an entry of default in order to accomplish justice. Stuski v. United States Lines, 31 F.R.D. 188 (E.D.Pa.1962). Cf. Klapprott v. United States, 335 U.S. 601, 614, 69 S.Ct. 384, 93 L.Ed. 266 (1949). In particular, a Rule 55(c) motion may be granted whenever the court finds (1) that the nondefaulting party will not be preju-

diced by the reopening, (2) that the defaulting party has a meritorious defense, and (3) that the default was not the result of inexcusable neglect or a willful act. Tozer v. Charles A. Krause Milling Co., *supra*. See generally Wright and Miller, Federal Practice and Procedure, § 2696.

The Court has no difficulty in finding the existence of the first two factors. The record discloses no special harm to Plaintiff which would result from the reopening of this action. There would be no unreasonable delay in the consummation of this action which was started on May 3, 1972 and is set for trial in June, 1973. Nor has Plaintiff shown that during the time within which Defendants failed to answer that he has lost available evidence, incurred greater costs, or that the opportunity for fraud and collusion has increased. See Titus v. Smith, 51 F.R.D. 224 (E.D.Pa.1970). Likewise, there is no doubt that the Defendants have a meritorious defense. Not only have they filed proposed answers asserting facts which, if true, would be a complete defense to liability, but they have the defense of the statute of limitations which has been successfully asserted by the three co-defendants who were granted summary judgment.

 The crux of this Rule 55(c) motion is whether the default of the Defendants resulted from inexcusable neglect. Certainly the failure to take any action whatsoever until approximately 10 months after service of the complaint, and only upon receipt of notice of the Clerk's entry of default, is evidence of neglect. Under normal circumstances, it would probably be considered inexcusable neglect. Cf. Titus v. Smith, 51 F.R.D. (E.D.Pa.1970). However, there are mitigating factors apparent in this case. Plaintiff's complaint was a rambling fourteen-page document, handwritten on yellow paper. While courts have become increasingly familiar with, and tolerant of, pro se documents such as this, laymen still equate "legal

matters" with formal, official-looking documents. The Court admits to a doubt as to how to treat some of the documents filed in prisoner civil rights actions. These three Defendants can hardly be blamed for misunderstanding the import of Plaintiff's complaint and the Court summons attached thereto. Also, each of the Defendants relied on advice from persons in positions of authority that the matter would be taken care of, or that the "correspondence" from Plaintiff was of no consequence. Whether the Defendants' neglect was inexcusable is a close question. Any doubt should be resolved in favor of setting aside the entry of default. Tozer v. Charles A. Krause Milling Co., *supra*. Therefore, I find that the default of the Defendants was not the result of inexcusable neglect.

The final reason in support of my decision to set aside the entry of default is that such a judgment would result in extreme inequity. Plaintiff's complaint alleges a substantial deprivation of constitutional rights. In granting default judgment, these allegations would be taken as true. Trans World Airlines, Inc. v. Hughes, 449 F.2d 51 (2d Cir. 1971), rev'd on other grounds, 409 U.S. 363, 93 S.Ct. 647, 34 L.Ed.2d 577 (1973). See Fehlhaber v. Indian Trails, Inc., 425 F.2d 715 (3d Cir. 1970). Thus, these three Defendants would be liable to Plaintiff for extensive damages, even though the alleged constitutional deprivations were not proven. As pointed out above, the Court by Order dated November 14, 1972, granted summary judgment in this case to three co-defendants on the grounds that the statute of limitations bars the action. The United States Court of Appeals for the Third Circuit has affirmed this decision. Schartner v. Coons, No. 73–1002 .(3d Cir. May 17, 1973). It appears, therefore, that the Defendants have an absolute defense in this case. Under these circumstances, justice demands that the Defendants' motions to set aside the en-

try of default be granted. See Broder v. Charles Pfizer & Company, 54 F.R.D. 583 (S.D.N.Y.1971).

An appropriate order has been entered.